UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN RABBERS,

       Plaintiff,                                    Hon. Richard Alan Enslen

v.                                                 Case No. 1:07-CV-845

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 42 years of age at the time of the ALJ's decision. (Tr. 21). He completed two years of college and worked previously as a welder, fabricator, maintenance supervisor, and autobody technician. (Tr. 21, 70, 78-80, 99-104, 280, 283-84).

Plaintiff applied for benefits on September 28, 2004, alleging that he had been disabled since January 21, 2004, due to bi-polar disorder. (Tr. 46-48, 69). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 33-57). On March 23, 2007, Plaintiff appeared before ALJ Dennis Greene, with testimony being offered by Plaintiff, vocational expert, Lee Knudsen, and medical expert, Dr. Kathleen O'Brien. (Tr. 274-325). In a written decision dated April 16, 2007, the ALJ determined that Plaintiff was not disabled. (Tr. 14-22). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-8). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On June 13, 2004, Plaintiff was admitted to Allegan General Hospital because he was acting "emotionally erratic." (Tr. 123). Plaintiff denied suicidal feelings, but reported that he had "a broken heart" because of his pending divorce. (Tr. 123). Plaintiff "described his mood as having highs and lows." (Tr. 123). Upon admission, Plaintiff's blood alcohol level was measured at 0.16 and a urine test was positive for marijuana. (Tr. 123). Plaintiff responded well to medication and by June 21, 2004, he "appear[ed] quite appropriate for discharge." (Tr. 123-33). Plaintiff was diagnosed with bipolar disorder with mixed features. (Tr. 132). It was further noted that Plaintiff had a history of alcohol abuse. (Tr. 132).

Following his discharge from the hospital, Plaintiff stopped taking his medication because he believed it was causing him to experience abdominal pain. (Tr. 147). Plaintiff subsequently experienced a manic episode and was readmitted to the hospital on July 7, 2004. (Tr. 147). Plaintiff tested positive for marijuana usage upon admission. (Tr. 147). Plaintiff again responded well to medication and was discharged on July 17, 2004. (Tr. 147-59). Upon discharge, Plaintiff was diagnosed with bipolar disorder with mixed features, as well as a history of alcohol abuse. (Tr. 146). At discharge, Plaintiff's GAF score was rated as 40-45.[1] (Tr. 146).

From July 24, 2003, through August 9, 2004, Plaintiff treated with Eugene Biegelman and Tom Denczek, MSW, through the Holland Hospital Outpatient Behavioral Health Services clinic. (Tr. 173-80, 213-35). During his visits, Plaintiff was asked to identify the difficulty he was

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 40-45 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

experiencing in the following areas on a scale of 1-5 (with "1=very bad" and "5=no problem"): anxiety, depression, crying episodes, panic attacks, social withdrawal, appetite, memory, concentration, decision making, ability to enjoy, energy level, motivation, interest, irritability, suicidal thoughts, suicidal plans, suicidal behavior, and feeling hopeless/worthless. (Tr. 173-80, 213-35). At the outset of his treatment, Plaintiff rated these areas as either 4 or 5 and by August 2004, Plaintiff rated all of these areas as 5. (Tr. 173-80, 213-35). During this time, Plaintiff consistently reported that he was taking his medication and treatment notes reveal that Plaintiff responded well to treatment. (Tr. 173-80, 213-35).

On November 19, 2004, Plaintiff participated in a consultive examination conducted by psychologist, Dennis Mulder, Ed.D. (Tr. 181-85). Plaintiff reported that his bipolar disorder "has improved with his use of medication and therapy." (Tr. 183). Plaintiff "was tearful when talking about his divorce and his loneliness," but the results of the examination were otherwise unremarkable. (Tr. 182-84). Plaintiff was diagnosed with bipolar disorder, improving with treatment, and history of alcohol abuse in short-term remission. (Tr. 184). Plaintiff's GAF score was rated as 50-55.[2] (Tr. 184). Mulder concluded that Plaintiff's potential to become "gainfully employed in a simple, unskilled work situation" was "fair pending his continued compliance with psychiatric treatment and substance abuse treatment." (Tr. 184).

On January 21, 2005, William Schirado, Ph.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 187-200). Determining that Plaintiff suffered from bipolar disorder and persistent disturbances of mood or affect, the doctor concluded

---

[2] A GAF score of 50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34. A GAF score of 51-55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." *Id.*

5

that Plaintiff satisfied the Part A criteria for Sections 12.04 (Affective Disorders) and 12.08 (Personality Disorders) of the Listing of Impairments. (Tr. 188-96). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular impairments. (Tr. 197). Specifically, the doctor concluded that Plaintiff suffered moderate restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and once or twice experienced episodes of decompensation. (Tr. 197). The doctor also reported that Plaintiff suffered from a substance addiction disorder. (Tr. 195).

Dr. Schirado also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 201-02). Plaintiff's abilities were characterized as "moderately limited" in six categories. With respect to the remaining 14 categories, however, the doctor reported that Plaintiff was either "not significantly limited" or that there existed "no evidence of limitation." (Tr. 201-02).

On February 20, 2005, Plaintiff reported that he was experiencing "no problem" in any of the various self-assessment categories identified above. (Tr. 211). On March 3, 2005, Plaintiff's GAF score was rated as 60.[3] (Tr. 209). Treatment notes dated May 18, 2005, reveal that, save for "memory" in which Plaintiff rated his difficulty as 4, Plaintiff continued to report that he was experiencing "no problem" in the various self-assessment categories identified above. (Tr. 205).

---

[3] A GAF score of 60 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

Between September 19, 2005, and July 19, 2006, Plaintiff participated in six therapy sessions at the Holland Hospital Outpatient Behavioral Health Services clinic. (Tr. 240-45). The treatment notes from these sessions reveal that Plaintiff responded well to treatment without significant difficulty. (Tr. 240-45).

On September 22, 2006, Bobga Fomunung, Ph.D. provided a sworn statement in support of Plaintiff's claim for disability benefits. (Tr. 246-68). Dr. Fomunung indicated that he had been counseling Plaintiff for "about a year now, a year and a couple months" at the Holland Hospital Outpatient Behavioral Health Services clinic.[4] (Tr. 248-49). The doctor reported that he was treating Plaintiff for bipolar disorder. (Tr. 249). The doctor further testified, however, that he only met with Plaintiff once every two to three months. (Tr. 267). The treatment notes attributed to Dr. Fomunung reveal that from September 19, 2005, through July 19, 2006, Plaintiff met with Dr. Fomunung only six times, with each visit lasting exactly 15 minutes. (Tr. 240-45).

Dr. Fomunung stated that Plaintiff would "struggle" performing full-time employment due to the "sedation" side-effects of his medication. (Tr. 254-56). Specifically, the doctor reported that "at least" three weeks each month Plaintiff would be unable to work due to the sedation side effects of his medication. (Tr. 256-57).

Plaintiff testified at the administrative hearing that he was unable to work because he "would have a hard time with attendance, staying awake." (Tr. 297). Plaintiff testified that he

---

[4] As Defendant correctly observes, while the administrative record contains many pages of records concerning Plaintiff's counseling at the Holland Hospital Outpatient Behavioral Health Services clinic, none of these records clearly identify Dr. Fomunung as Plaintiff's care provider. While the record does contain six pages of treatment notes created during the time period which Dr. Fomunung asserts that he treated Plaintiff, the signatures on these treatment notes are illegible. (Tr. 240-45). There is no other evidence in the administrative record identifying the author of these treatment notes. Plaintiff nonetheless asserts that these treatment notes were authored by Dr. Fomunung. As such is a reasonable conclusion from the evidence of record, the Court has assumed that these six pages of treatment notes were authored by Dr. Fomunung.

falls asleep after taking his medication. (Tr. 298). When asked how long he sleeps after taking his medication, Plaintiff did not know, saying only that "it varies." (Tr. 298).

Dr. Kathleen O'Brien, a licensed clinical psychologist, testified as a medical expert in this matter. In her review of the medical record, Dr. O'Brien discovered a discrepancy regarding Plaintiff's reported substance use. (Tr. 307-08). On July 13, 2004, Plaintiff's blood alcohol level was measured as 0.16 (twice the legal limit). (Tr. 123). The results of a urine test were positive for marijuana. (Tr. 123). Nonetheless, as the doctor observed, on November 19, 2004, Plaintiff reported that he had last consumed alcohol "six months ago" (i.e., approximately May 2004). (Tr. 182). On March 3, 2005, Plaintiff reported that he had last consumed alcohol in October 2004, one month *before* declaring that he had not consumed alcohol since approximately May 2004. (Tr. 207).

Dr. O'Brien considered this relevant because the use of alcohol or marijuana "would eliminate the ability of the meds to do their job." (Tr. 310). The doctor further observed that the use of alcohol and drugs "would certainly account for" the level of alleged sedation Plaintiff was experiencing "because both the medication he's taking and the depressive effect of both cannabis and alcohol would have a sedative effect and would be a cumulative effect." (Tr. 310).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[5] If the Commissioner can make a

---

[5] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

**B. The ALJ's Decision**

The ALJ determined that Plaintiff suffered from bi-polar disorder, a severe impairment that, whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 16-17). The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 17-22). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1. The ALJ's Decision is Supported by Substantial Evidence**

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable

---

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform simple unskilled work. (Tr. 17-20). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff had no past relevant work experience, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly,

ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Lee Knudsen.

The vocational expert testified that there existed at least 13,500 jobs at the medium level of exertion, at least 6,000 jobs at the light level of exertion, and at least 1,970 jobs at the sedentary level of exertion which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 320-22). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006) (870 jobs in region constitutes a significant number).

### a. The ALJ Properly Assessed the Medical Evidence

As noted above, Dr. Fomunung stated that Plaintiff would "struggle" performing full-time employment due to the "sedation" side-effects of his medication. Specifically, the doctor reported that "at least" three weeks each month Plaintiff would be unable to work due to the sedation side effects of his medication. Plaintiff asserts that because Dr. Fomunug was his treating physician, the ALJ was obligated to afford controlling weight to his opinions, which Plaintiff asserts evidence his disability.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical

condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

The ALJ discounted Dr. Fomunung's opinion. Specifically, the ALJ observed that the doctor's opinion was "not supported by the medical records and treatment notes from previous treating psychiatrists or psychologists." (Tr. 20). In this regard, the ALJ specifically noted that Dr. Fomunung's own treatment notes did not support the opinion he offered in his subsequent sworn statement. (Tr. 20). Throughout the course of his treatment with various care providers, Plaintiff *never* reported that he was experiencing sedative side effects from his medication. (Tr. 173-80, 181-85, 205-15, 217-18, 220, 223-32, 234-35, 240-45). Moreover, as the ALJ further observed, Dr. Fomunung had been treating Plaintiff for a relatively short period of time, during which he examined Plaintiff approximately every two months for only 15 minutes. (Tr. 20). Finally, as Dr. O'Brien

testified, Plaintiff's inconsistent reports of substance use may explain Plaintiff's allegations of feeling sedated. In sum, there exists substantial evidence to support the ALJ's decision to accord less than controlling weight to Dr. Fomunung's opinion.

b. The ALJ Properly Evaluated Plaintiff's Non-Exertional Limitations

As discussed above, at step four of the sequential disability evaluation process, the ALJ is required to assessed the claimant's residual functional capacity. As part of this process, when there exists evidence that the claimant also suffers from a non-exertional (i.e., a mental) impairment, the ALJ is required to specifically evaluate the claimant's limitations in the following areas: (1) activities of daily living, (2) social functioning, (3) concentration, persistence or pace, and (4) episodes of decompensation. *See* 20 C.F.R. § 404.1520a. Plaintiff asserts that this matter must be remanded because the ALJ failed to assess his limitations in these four areas as required.

In his opinion, the ALJ adopted by reference Dr. Schirado's assessment of Plaintiff's limitations in these particular areas. (Tr. 19-20). Dr. Schirado concluded that Plaintiff suffered moderate restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and once or twice experienced episodes of decompensation. (Tr. 197). These conclusions are supported by substantial evidence. The Court, therefore, discerns no error.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: July 31, 2008              /s/ Ellen S. Carmody
                                 ELLEN S. CARMODY
                                 United States Magistrate Judge